IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| XL SPECIALTY INS. CO.<br>a/s/o/ MICHAEL PORT | : | CIVIL ACTION |
| | : | |
| vs. | : | NO.  1:18-cv-2703 (CCB) |
| | : | |
| JEANNEAU AMERICA INC. | : | |
| | : | |
| And | : | |
| | : | |
| PRESTIGE LUXURY MOTOR YACHTS | : | |
| | : | |
| And | : | |
| | : | |
| CHESAPEAKE YACHT CENTER, LLC | : | |

## MEMORANDUM OF LAW OF CHESAPEAKE YACHT CENTER, LLC
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Chesapeake Yacht Center, LLC, (hereafter "CYC"), by and through its undersigned counsel, submits the following Memorandum of Law in opposition to the Motion for Summary Judgment of XL Specialty ("XL").

### PRELIMINARY STATEMENT

Plaintiff's case here is fundamentally flawed.  After the close of all discovery, XL cannot prove the cause of the fire aboard the HOME PORT.  The case law is clear—regardless whether the claim is for products liability in tort, breach of contract, or breach of warranty—the plaintiff has the burden to identify a specific defect in a component aboard the vessel that was the cause of the fire.  Here, both of XL's experts, Schaal and Flaherty, have testified that they cannot identify which of several components in the area of the origin of the fire actually caused the fire.  Moreover, their inability to identify any component as the cause necessarily means they cannot identify a defect in said component.

Absent such proof, all of plaintiff's claims fail.

1

## SUMMARY JUDGMENT STANDARD

Plaintiff's Complaint was filed under this Court's admiralty jurisdiction, 28 U.S.C. § 1333 (D.I. 1) and therefore, if necessary, the case will be tried to the Court, rather than a jury. An argument often made in connection with summary judgment is that the Court should be reluctant to dismiss a case on summary judgment because it invades the right of the jury to decide the facts. That concern is not applicable here—as will be discussed below, the dispositive question in this case is whether Plaintiff can prove that a defect in a component of the HOME PORT caused the fire. XL relies on its two experts to meet that burden, but they have both admitted they do not know which of several components caused the fire, and they are unable to identify a defect in a component as the direct cause.

Fact and expert discovery have been completed, and because of the well-established rule that an expert's trial testimony is limited to the opinions that he or she sets forth in their report, the expert opinions and testimony already submitted to the Court as exhibits to the pending motions are the same evidence that would be presented to this Court at trial.

In short, this Court now has before it all of the evidence with respect to the cause of the fire that would otherwise be presented at trial. The question raised by the pending motions is whether the evidence presented by XL concerning the cause of the fire is sufficient to meet its burden of proof—a question of law that the Court can address in these motions as easily as when the same evidence is presented at trial.

## CYC'S DISCLAIMER OF WARRANTIES IS EFFECTIVE UNDER PENNSYLVANIA LAW

Binding Supreme Court precedent precludes XL from recovery in tort for the loss of the HOME PORT. (See discussion *infra*). Therefore, XL must rely on breach of warranty claims in order to prove its case.

PBH566553.1

Plaintiff correctly observes that its claims for breach of warranty are not governed by admiralty law, and that this Court, as a court sitting in diversity, should look to the choice of law rules of the state of Maryland to determine the applicable law.  (XL Memorandum at 5, D.I. 44). *Ace American Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F.Supp.2d 697, 704 (D. Md. 2008), *citing to Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). XL contends that Maryland follows the *lex loci delicti* rule (i.e., the law of the place where the tort was committed), and that therefore the breach of warranty claims are subject to Maryland law. However, Maryland has different choice of law rules for tort and breach of contract claims, and Maryland's use of the *lex loci delicti* rule is, as the Latin phrase suggests, limited to tort cases. *Laboratory Corp. of America v. Hood*, 395 Md. 608, 615 (Md. Ct. App. 2006).

Under Maryland law, the choice of law rule applicable to claims for breach of contract and breach of warranty is *lex loci contractus* (i.e., the law of the place of contracting). "In breach of contract actions, this Court has traditionally applied the doctrine of *lex loci contractus*, under which, in deciding upon the validity and construction of a contract, we generally apply the law of the place where the contract was made." *Laboratory Corp.*, 395 Md. at 620.

Under Maryland's contractual choice of law rule, a contract is formed where the last act necessary to make the contract binding occurs. *Sting Sec., Inc. v. First Mercury Syndicate, Inc.*, 791 F.Supp. 555, 558 (D.Md.1992); *Travelers Indem. Co. v. Allied–Signal, Inc.*, 718 F.Supp. 1252, 1253 (D.Md.1989).  As set forth in CYC's Motion for Summary Judgment, the last acts required to complete the formation of the contract between CYC, on the one hand, and Mr. Port and Ms. Cronise-Mead, on the other, took place in Pennsylvania, the state where Mr. Port and his wife both lived.  It was in Pennsylvania that Mr. Port and Ms. Cronise-Mead signed the various documents

PBH566553.1

required to complete the contract of sale.[1] Therefore, because the last act required for the formation of the contract took place in Pennsylvania, Plaintiff's breach of warranty claim is governed by the law of Pennsylvania, and not the law of Maryland.

This distinction is important because Pennsylvania and Maryland have different laws concerning whether a disclaimer of implied warranties is effective in these circumstances. As set forth in CYC's Motion for Summary Judgment (D.I. 41), disclaimers of implied warranties are effective under Pennsylvania law,[2] as long as the disclaimer is in writing and conspicuous.  13 Pa.C.S.A. § 2316; *Prousi v. Cruisers Div. of KCS Intern.*, Inc., 975 F.Supp. 768, 775 (E.D. Pa. 1997) (disclaimer of warranty provision in contract for sale of boat was effective because it was in capital letters and therefore sufficiently conspicuous).   Here, CYC's disclaimer of implied warranties was in all capital letters. Moreover, when he signed the agreement, Mr. Port acknowledged that he had read the terms and conditions on the reverse side, which included the Warranty Disclaimer as paragraph 9. (Marine purchase agreement, Exhibit B to CYC Statement of Facts, D.I. 41).

Because the question whether the warranty disclaimer is effective is governed by Pennsylvania law, and because the disclaimer of warranties in the agreement is conspicuous as required by the applicable Pennsylvania law, CYC's disclaimer of implied warranties is enforceable. As a result, CYC did not provide any implied warranties to Mr. Port and Ms. Cronise-Mead.

---

[1] Closing papers showing Pennsylvania notarization of signatures, attached as Exhibit H to CYC Statement of Uncontested Facts. (D.I. 41).

[2] Disclaimers of warranties are not effective under Maryland law in consumer contracts, and the CYC marine purchase agreement would be considered a consumer contract. *Anthony Pools v. Sheehan*, 455 A. 2d 434, 441 (Md. 1983).

PBH566553.1

## PLAINTIFF'S ARGUMENT THAT THE HOME PORT WAS NOT MERCHANTABLE IS NOT RELEVANT WITHOUT PROOF OF A DEFECT THAT CAUSED THE FIRE

At pages 9 through 13 of its Memorandum of Law, XL describes various problems Mr. Port allegedly had with the HOME PORT. However, notably absent from this discussion is any causal link between the alleged problems and the fire aboard the HOME PORT. Plaintiff's claim in this lawsuit is a subrogated claim for damage sustained when the HOME PORT caught fire. The various alleged defects set forth in Plaintiff's Memorandum might be relevant if this was a "lemon law" claim by Mr. Port in which he sought to return the boat. However, this is a case alleging that a defect caused the fire, and therefore any alleged defects are only relevant if there is some proof by XL that one or more of the alleged defects caused the fire.

In a products liability or breach of warranty case seeking recovery for damage caused by a fire, "a plaintiff must demonstrate that, (1) the product was defective; (2) the defect existed while the product was in the control of the manufacturer; and (3) the defect was the proximate cause of the plaintiff's injuries." *State Farm Fire and Cas. Co. v. Gopher Baroque Enter. Ltd.*, 2010 WL 5464767 (E.D. Pa., Dec. 29, 2010) (emphasis added); *see also, Ford Motor Co. v. General Acc. Ins. Co.*, 365 Md. 321 (Ct. App. 2001).

XL does not contend that any of the allegedly defective components described at pages 9 through 13 of its Memorandum caused the fire. For example, Mr. Flaherty testified that he did not believe the navigation lights, or the radar caused the fire. (Flaherty deposition at 61-2, D.I. 41, Exhibit E). Given that several of the components identified were nowhere near the area XL contends was the origin of the fire—the electric stove, the VHF Radio and the navigation lights were all located on the decks above the engine room—reference to any alleged defects in those components is simply a red herring designed to distract the Court from the fact XL cannot identify any defect that caused the fire.

## XL HAS NO CLAIM IN TORT FOR DAMAGE TO THE HOME PORT

Counts 3 and 4 of XL's Complaint (for negligence and strict liability) allege claims in tort. (D.I. 1).  XL's lawsuit involves three categories of damages; 1) The bulk of its claim is for the loss of the HOME PORT, along with lesser claims for; 2) Loss of personal effects owned by Mr. Port and his family aboard the boat; and 3) Loss of a small boat which was located on the stern platform of the HOME PORT.

As discussed in CYC's Motion for Summary Judgment (D.I. 41 at 4-6), XL's claims in tort against CYC for the loss of the HOME PORT itself are barred by *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).  Although the foregoing Supreme Court precedent is not specifically cited to by XL in its Memorandum of Law, XL apparently concedes that it has no claim in tort for the loss of the HOME PORT.  (XL Memorandum at 8, "An admiralty tort plaintiff cannot recover for any damage to the product itself . . .")

In addition to the total loss of the HOME PORT, Plaintiff has also claimed in tort for amounts it paid to Mr. Port for damage to other property on the boat at the time of the fire, relying on the Supreme Court decision in *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875 (1997) (holding that extra equipment including a skiff was not considered part of the product itself and therefore not barred by *East River* "economic loss" doctrine.)

However, as will be discussed in detail below, XL faces the same hurdle to recover in tort for the damage to this other property that it faces on its breach of warranty claims, i.e. XL has the burden to prove that a defect in a component aboard the boat at the time it was sold to Mr. Port caused the fire, and Plaintiff has shown it cannot satisfy this burden.

PBH566553.1

## PLAINTIFF'S FAILURE TO PROVE THAT A DEFECT CAUSED THE FIRE BARS XL'S BREACH OF WARRANTY AND REMAINING TORT CLAIMS

Although XL's tort claims for the damage to the other property are based on maritime law, whereas the breach of warranty claims are based on state law, the test is the same—the plaintiff has the burden to prove that a defect in a component aboard the boat when it was sold by CYC was the cause of the fire. *Compare, State Farm Fire and Cas. Co. v. Gopher Baroque Enter. Ltd.*, 2010 WL 5464767 (E.D. Pa., Dec. 29, 2010) and *Ford Motor Co. v. General Acc. Ins. Co.*, 365 Md. 321 (Ct. App. 2001) (holding that under Pennsylvania and Maryland law respectively a plaintiff must prove the existence of a defect at the time the product leaves the manufacturer to recover on an implied warranty claim, a strict liability or a negligence claim), with *Great American Ins. Co. v. Pride*, 847 F.Supp.2d 191 (D. Me. 2012) (in fire aboard a fishing boat, Plaintiff has the burden to prove that a defect resulting from the defendant's conduct caused the injury).

However, XL has failed to prove which component or associated wiring caused the fire, let alone provide any proof that there was a defect in a part aboard the boat when CYC sold it that caused the fire. Courts have dismissed suits in which the plaintiff claims that, because an accident or fire happened without an apparent cause, the manufacturer or seller of the product is liable. *Jensen v. American Motors Corp., Inc.*, 50 Md.App. 226, 232, 437 A.2d 242 (1981). To hold otherwise would place a defendant in an impossible position. In this case, XL contends that the fire was caused by an unspecified defect in one or more of several components, or wiring connected to those components. (Flaherty report at 9-10, Exhibit G, D.I. 41). Without some information identifying the component that caused the fire, and the alleged defect in said component, CYC cannot defend itself.

XL makes two arguments in an apparent effort to distract the Court from the clear statements by its experts that they do not know the cause of the fire. XL's first argument is that

the fire was electrical in nature, and because there were several electrical components in the area

of the origin of the fire, there must have been a defect in one or more of them to cause the fire.

(XL Memorandum at 16-8, D.I. 44).   The second argument, which effectively concedes that

Plaintiff cannot prove the cause, is XL's reliance on the "Indeterminate Defect" theory set forth in

*Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md.App. 41 (Md. Ct. Spec. App.

1988). (XL memorandum, at 18-22, D.I. 44).

Numerous courts have held that an expert opinion stating that a fire was "electrical in

nature" is not sufficient to satisfy the plaintiff's burden of proof in a fire case.   For example, in

*Community Preschool & Nursery of East Liberty, LLC v. Tri-State Realty, Inc.*, 717 F.Supp.2d 482

(W.D. Pa. 2010), *aff'd* 430 Fed. Appx. 125 (3d Cir. 2011), a fire occurred in a building which the

plaintiff contended was caused by an electrical malfunction in wiring between the floors.   The

court granted summary judgment to the defendants, stating:

> All of the experts agreed, therefore, that the cause of the fire was probably an
> electrical malfunction. Additionally, none of the experts gave an opinion regarding
> the specific cause of the electrical malfunction. That is, the experts described
> possibilities of what may have been the problem with the wiring, but none could
> say for certain what caused the electrical malfunction. There is some uncertainty as
> to the exact cause in-fact of the electrical fire, but that factual dispute, although
> genuine, is not material because there is no evidence that Tri–State's alleged breach
> of duty was the proximate cause of the fire, leaving a gaping hole in the causal
> chain. 717 F.Supp.2d at 490.

*See also, Gross v. DaimlerChrysler Corp.,* 2003 WL 23305157 (D. Md., Sep. 29, 2003) (granting

summary judgment to defendant auto maker, despite expert opinion that fire was electrical in

nature, because the plaintiff failed to prove that a specific defect caused the fire); *Redford v SC*

*Johnson & Son, Inc.*, 437 F.Supp.2d 391, 397 (D. Md. 2006) (granting summary judgment to

manufacturer of air freshener where plaintiff failed to identify a specific electrical defect in the

product); *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F.Supp.2d 334, 352-3 (D.

PBH566553.1

Md. 2011) (granting summary judgment to repairer of computer where plaintiff's experts could not identify specific defect that caused electrical shock).

The gravamen for a products liability or breach of warranty claim against a seller is that the seller is liable for damage caused by a defective product.  An averment that a fire is "electrical in nature" does not prove that the product was defective.

Because its argument that the fire was "electrical in nature" does not satisfy its burden of proof, XL then cites to the Maryland Court of Special Appeals' decision in *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md.App. 41 (Md. Ct. Spec. App. 1988) as support for an argument that circumstantial evidence can sometimes be used to satisfy a plaintiff's burden in a product liability or breach of warranty case where the plaintiff cannot prove the direct cause of a fire.  However, even before setting forth what has become known as the "indeterminate defect theory", the court in *Harrison* expressed the following caveat:  "It is axiomatic, however, that "proof of a defect must arise above surmise, conjecture, or speculation ...; and one's right to recovery may not rest on any presumption from the happening of an accident."" *Harrison* 77 Md.App., 50-1, citing to *Jensen v. American Motor Corp.*, 50 Md.App. 226, 232, 437 A.2d 242 (1981); *see also, Hoban v. Grumman Corp.*, 907 F.2d 1138, *2 (4th Cir. 1990) (unpublished opinion, citation omitted) (affirming summary judgment to a manufacturer of a plane engine where there was no evidence that the fire was caused by a manufacturing defect, stating: "While it is true that circumstantial evidence may be sufficient to permit a jury to reasonably infer negligence or warranty liability, "such circumstantial evidence must be sufficient to establish that the result alleged is a probability rather than a mere possibility."").

In *Harrison*, the Court set forth the following five factors "to be considered in determining whether a product defect may be inferred from circumstantial evidence . . . (1) expert testimony as

PBH566553.1

to possible causes; (2) the occurrence of the accident a short time after the sale; (3) same accidents in similar products; (4) the elimination of other causes of the accident; (5) the type of accident that does not happen without a defect." *Id.*

When these five factors are applied to the present case, it is clear that XL still does not meet its burden.

### 1. Expert Testimony as to Possible Causes

XL posits that it satisfies the expert testimony requirement because Mr. Flaherty has provided an opinion that the fire was electrical in nature. (XL Memorandum at 19, D.I. 44). However, the decision in *Harrison* itself makes it clear that an allegation that the fire was electrical in nature is not sufficient. In *Harrison*, the plaintiff's two experts agreed on the origin of the fire (under the car's dashboard) and testified that they believed the cause of the fire was electrical in nature, but they failed to identify what had caused the electrical short circuit. This case is almost identical—here, XL's experts Schaal and Flaherty have identified the origin (on the after bulkhead in the engine room), have testified that the cause of the fire was electrical in nature, but admit they cannot identify which of several components may have been the cause, and cannot identify a specific defect in a component as the cause of the fire. The Court in *Harrison* rejected as insufficient the plaintiff's argument that the fire was electrical in nature, stating, "[t]he plaintiff's evidence simply does not permit an inference that a defect existed at the time Ford manufactured the vehicle five years prior to the accident giving rise to the appellants' injuries." *Id.*, at 54.

Moreover, as noted above, there are numerous cases which have held that an expert opinion that the fire was "electrical in nature" is not sufficient to prove the cause of a fire in either a products liability or breach of warranty case.

The only expert evidence plaintiff has produced here is with respect to the *location* of the origin of the fire, without any evidence concerning the *cause* of the fire.  Evidence which is limited to the fire's location, but not its cause, does not satisfy the first of the *Harrison* factors.  *Assurance Co. of America v. York Intern., Inc.*, 305 Fed.Appx. 916, *6-7 (4th Cir. 2009) (unpublished opinion) (holding, in a fire case, that evidence that a fire started in a boiler failed to satisfy the first *Harrison* factor because there was no evidence as to the cause of the fire.)

### 2.  The Occurrence of the Accident a Short Time after the Sale

The rational for this factor is obvious—the longer a consumer uses a product, the more likely it becomes that a defect was the result of the use of the product or other intervening events, rather than due to a defect that existed at the time of the sale.

XL makes much of the fact that the fire occurred relatively soon after Mr. Port purchased the boat from CYC.  However, Mr. Port was a frequent user of his boat during the intervening ten months he owned it (November 2015 through August 31, 2016), using it most weekends, and also taking a week and a half long trip to Virginia in July or August.  (Port dep. at 21-4, Exhibit C, D.I. 41).  Because of this extensive use of the boat by Mr. Port, there is less reason to infer that the fire was caused by a defect that existed at the time of sale, rather than that the defect was caused by the forces and stresses on the boat during Mr. Port's frequent sailing trips.

*Harrison* did not specify how long of a period between the manufacture or sale of the product and the incident was considered probative.  The Fourth Circuit has held that "[a]lthough there are no "hard-and-fast" rules regarding what length of time is sufficient to satisfy this factor, the *Harrison* case suggested that in most of the cases where courts have found the factor to be satisfied, the accidents occurred within two to three months of the time that the products left the

control of the manufacturer." *Assurance Co. of America*, at 924 (but conceding that eight months could possibly qualify).

### 3.  Similar Accidents in Similar Products

XL contends that the third *Harrison* factor is satisfied because there were one or two fires aboard other Prestige yachts.   However, XL has provided no evidence of any similarity between these other events and the fire aboard the HOME PORT.  XL has not proven where on the boats these other fires took place.  For example, a cooking fire caused by hot oil splashing out of a pot on the stove that causes a boat to burn has no relevance to a fire that starts in a boat's engine room.

It is also not clear whether the other fires occurred when the boats were under way, or moored at the dock as in the case of the HOME PORT.  When a boat is under way, there are numerous other possible factors that could cause a fire, such as heat from the engines, flow of fuel and operation of an electrical generator, that simply do not come into play when the boat is alongside a dock and connected to shore power.

XL also has provided no evidence of how many Prestige boats were in operation during the period these other fires occurred.  For example, there is a far stronger case of circumstantial evidence if there were two similar fires among 10 boats, as opposed to two fires among 10 million boats.

It stands to reason that if there have been a series of fires in very similar circumstances in a relatively small population it is more reasonable to draw an inference that a fire was also due to the same manufacturing defect.  However, in this case XL has failed to prove either that the circumstances of the other fires were similar to this fire, or how frequent these other fires were. *See, Redford v SC Johnson & Son, Inc.*, 437 F. Supp. 2d 391, 397 (D. Md. 2006) (holding that

plaintiff failed to satisfy the similar accident test of *Harrison* because there was no proof that the other incidents were similar in nature to the alleged defect).

### 4. The Elimination of Other Causes of the Accident

Once again, XL has failed to satisfy this *Harrison* factor because it cannot rule out that there were causes of the accident other than a defect in a component which was aboard the boat at the time CYC sold it to Mr. Port and his wife. In fact, Mr. Flaherty conceded as much in his deposition.  As discussed in CYC's Motion for Summary Judgment (D.I. 41, at 14), one of the electrical components in the area of the origin of the fire was an Engine Control Module ("ECM") which had been replaced by Cummins East on July 20 under Cummins' warranty.  Replacement of the ECM would have required that the Cummins' technician disconnect the electrical connections to the old ECM, and then reconnect the associated wiring after the new ECM was installed.

According to the evidence in this case, Cummins' replacement of the ECM was the last known work performed in the area XL's experts have identified as the origin of the fire.  (Cummins Invoice, Exhibit J; Flaherty deposition at 92, D.I. 41, Exhibit E).  As Mr. Flaherty testified, it is certainly possible that the replacement of the ECM could have resulted in a short circuit which ultimately caused the fire.  (Flaherty deposition, at 52 and 94, replacement ECM "could have been" the cause of the fire, and engine control modules "are one of the potential fire causes in the area of fire origin . . .").

Mr. Flaherty also admitted that the inherent nature of boats could have led to the cause of the fire.  He testified that boats are subject to a variety of movements and vibrations that can cause damage when things rub against each other.  In addition, because boats operate on the water, they

are subject to water intrusion that can accelerate corrosion.  All of these events can cause the conditions that lead to an electrical arcing event. (Flaherty deposition at 57, D.I. 41, Exhibit E,)

Therefore, it is clear from the testimony of XL's own expert, Mr. Flaherty, that XL has not eliminated as a possible cause parts which were installed, along with wiring connections, by Cummins, a third party to this lawsuit, nor has XL eliminated other causes such as friction or corrosion.

**5. The Type of Accident that does not Happen Without a Defect**

Judge Motz of this court has explored what is meant by the fifth *Harrison* factor, and concluded that the test is only fulfilled where, "the accident is of a type that does not happen without a defect regardless of whether other causes are eliminated." *Redford v SC Johnson & Son, Inc.*, 437 F.Supp.2d 391, 398 (D. Md. 2006) (emphasis added); *see also, Watson v. Sunbeam Corp.*, 816 F.Supp. 384, 389 (D.Md.1993).  Under that test, it is clear that the fire aboard the HOME PORT could certainly have been caused by something other than a defect in a part aboard the boat at the time it was sold by CYC to Mr. Port and his wife.

For example, the fire could have been caused by wear and tear causing a loss of insulation on electrically charged wiring resulting in a short circuit, or electrical arcing over a connection that became loose as the boat pounded on the water as Mr. Flaherty has conceded. (See discussion above in Point No. 4).  Not every electrical malfunction is necessarily the result of a defect. *See e.g., Gross v. DaimlerChrysler Corp.*, 2003 WL 23305157, *4 (D. Md., Sep. 29, 2003) (fire in the engine compartment of a car could occur in the absence of a defect such as an electrical malfunction not the result of a defective part).

To sum up, this case presents a factual scenario very similar to that in *Harrison* and *Jensen*—an accident occurred and although XL's experts have identified the location of the origin

of the accident, they have not identified the cause of the fire, nor any specific defect that caused

the fire. Under such circumstance, the court's holding in *Jensen* applies equally here:

> Regardless of the recovery theory, the plaintiff in product litigation must satisfy
> three basics from an evidentiary standpoint: 1) the existence of a defect; 2) the
> attribution of the defect to the seller; and 3) a causal relation between the defect and
> the injury. . . . . Appellants here have satisfied none of the above. They have been
> unable to show that what might possibly have happened did probably happen.
> Reduced to its simplest form, their argument is that because [an] accident happened
> without apparent cause, the manufacturer must be to blame. Such a theory is not
> supported by established principles of common-law negligence or strict liability or
> breach of warranty. It is simply wishful thinking. *Jensen v. American Motors Corp.,
> Inc.*, 50 Md.App. at 234–35, 437 A.2d 242 (citation omitted).

## CONCLUSION

XL's negligence and strict liability claims against CYC for the fire damage to the HOME

PORT itself are barred by binding Supreme Court precedent. *East River S.S. Corp. v.
Transamerica Delaval*, 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

XL's breach of implied warranty claims against CYC should be dismissed because CYC

disclaimed any implied warranties, and its disclaimer is effective under the applicable law.

Finally, XL's remaining claims also fail because Plaintiff has failed to prove the cause of

the fire, and to prove that any of the components on the boat at the time CYC sold the boat to Mr.

Port and his wife were defective and that defect caused the fire.

**WHEREFORE**, Defendant CYC respectfully submits that Plaintiff's Motion for Summary Judgment should be denied, together with all other relief the Court deems proper under the circumstances.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

By: _-s- Stephen M. Calder_
       Stephen M. Calder
       222 Prince George Street Suite 114
       Annapolis, MD 21401
       410-267-0010
       E-mail: scalder@pbh.com

OF COUNSEL:

Michael B. McCauley
Kevin G. O'Donovan
PALMER BIEZUP & HENDERSON LLP
190 N. Independence Mall West
Suite 401
Philadelphia, PA 19106

Dated: November 7, 2019

PBH566553.1

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing

Memorandum of Chesapeake Yacht Center, LLC in Opposition to Plaintiff's Motion for Summary

Judgment, together with the accompanying Opposition to Plaintiff's Statement of Uncontested

Material Facts, was served via electronic filing upon counsel of record as follows:

John H. West, III
West & West, LLC
409 Washington Ave., Suite 1010
Baltimore MD 21204
*Attorney for Plaintiff*

Christopher M. Schierloh
Casey & Barnett, LLC
305 Broadway, Suite 1202
New York, NY, 10007
*Attorney for Plaintiff*

C. Edward Hartman, III
Hartman Attorneys at Law
116 Defense Highway, Suite 300
Annapolis, MD 21401-7047
*Attorney for Jeanneau*

PALMER BIEZUP & HENDERSON LLP

By:   -s- *Kevin G. O'Donovan*
Kevin G. O'Donovan

Dated: November 7, 2019